1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CALEB ALLEN and KASEY ALLEN, individuals, and as plaintiff's father and mother and with father as guardian on behalf of minor child, A.A., <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM SERVICES, LLC, a Delaware limited liability company, <br><br> Defendant. | **Civil Action No.** <br><br> **PLAINTIFFS' ORIGINAL COMPLAINT FOR DAMAGES AND INJUNCTION:** <br><br> (1) **PRODUCTS LIABILITY-NEGLIGENCE;** <br> (2) **STRICT PRODUCTS LIABILITY-DESIGN AND MANUFACTUING DEFECT;** <br> (3) **STRICT PRODUCTS LIABILITY-FAILURE TO WARN;** <br> (4) **BREACH OF IMPLIED WARRANTIES;** <br> (5) **NEGLIGENT UNDERTAKING; AND,** <br> (6) **INFLICTION OF EMOTIONAL DISTRESS** <br><br> **JURY DEMAND** |

COMPLAINT FOR DAMAGES AND INJUNCTION - 1
No.

**CORR|DOWNS PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

COME NOW the PLAINTIFFS Caleb and Kasey Allen, individually, and as guardians on behalf of their minor child A.A. (collectively "Plaintiffs"), and complain against Amazon.com Services, LLC ("Defendant") and for causes of action against the Defendant, allege as follows:

## I.    INTRODUCTION

1.      A.A. ("A.A.") is a 16-month-old child who was seriously injured after A.A. ingested a button battery that fell out of a wireless steering wheel mounted remote control that was adapted to work with an Apple car play.  The button battery readily fell out of a defective remote control with no safety mechanisms to guard against such events.  A.A. ingested the battery on October 13, 2023, and has experienced extreme pain and suffering as a result.

2.      "Button batteries" are small round batteries that power a variety of electronic devices. The little silver colored batteries are typically lithium-ion, and they are tremendous swallowing hazards to small children.  Little children are particularly vulnerable because they put things in their mouth, and button batteries can get stuck in their esophagus.  An electrical current can form in the body where the battery is lodged, and hydroxide, an alkaline chemical surrounds the battery and can cause tissue burns.  This was the type of battery swallowed by A.A.

3.      The damage from the battery was so severe to A.A.'s young body that A.A. has been forced to go through exploratory and corrective surgeries to remove the battery. More surgeries are expected to be needed.

4.      The product in question was a wireless steering wheel mounted remote control that was adapted to work with a car stereo or radio display with Apple car play, which was sold under a brand promoted by Amazon (hereinafter "Defective Product" or "Product") that has yet to be identified for certain but will be identifiable in preliminary discovery from the known upstream purchaser.  The battery fell out of the remote which was situated on the steering wheel of the family's RV while the family was on vacation. The RV was a previously owned vehicle.

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

5.     This product was unreasonably dangerous to consumers, and this is a product liability action to address the dangers.  The injury in question did not need to happen, and it would not have happened if the product was manufactured, marketed, and sold in a manner that was safe.  Plaintiffs, through this lawsuit, also seek to prevent such catastrophes to other unsuspecting parents and innocent children. Plaintiffs want to enjoin the sales of dangerous products like the ones that hurt A.A., and they seek warnings to others about defects.

6.     The horrendous dangers posed to young children by easily accessible lithium button batteries have been well documented in recent years.  They have been noted by consumer protection groups, physicians, the media, and even some elements of the electronics industry, who have lobbied for alternative designs to prevent more children from being injured.  There are industry standards for manufacturers and sellers to protect compartments that contain button batteries. But if safer alternatives are ignored and unreasonably dangerous products are recklessly thrust into commerce, where they fall into the hands of innocent children, those safety standards and recommendations are meaningless to prevent foreseeable harm.  Also, "planned obsolescence" is unacceptable when it comes to the safety related features of a product.  If a product's safety features are designed or manufactured in a manner that the safety components will fail in short order with ordinary use, those products are defective and unreasonably dangerous.

7.     This lawsuit is based on the design defects, manufacturing defects, negligence, failures to warn, and breaches of warranties that led to the serious injury of a small child.

## II.     PARTIES

8.     Plaintiffs are Caleb and Kasey Allen, individually as parents, and as the representative and guardian ad litem of his minor son, A. A..  The Plaintiffs are residents of Monroe, Louisiana.

9.     Plaintiffs are informed and thereon allege that Defendant Amazon.com Services, LLC is a limited liability company organized and existing under the laws of the state of Delaware with a principal place of business at 410 Terry Ave. N., Seattle, WA 98109. Service of process is proper on Amazon.com Services, LLC on its registered agent for service

COMPLAINT FOR DAMAGES AND INJUNCTION - 3
No.

Corr|Downs PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

of process, Corporation Service Company, at 300 Deschutes Way SW, Ste. 208, MC-CSC1, Tumwater, WA 98501.

### III.    JURISDICTION AND VENUE

10.    This Court has jurisdiction because of diversity between the parties under 28 U.S.C. § 1332(a).  The Plaintiffs and Defendant have complete diversity of citizenship at the time of filing and the dispute far exceeds $75,000 in controversy, exclusive of interest, punitive damages, attorney fees or other litigation costs.

11.    Venue is proper in this Court under 28 U.S.C. §1391(b)(1).  Defendant has a principal place of business in this federal judicial district, conduct substantial and extensive business in the State of Washington, and in this federal judicial district, and are also believed to have imported, promoted, designed and distributed defective products in and from the State of Washington, and in this district; therefore, they are subject to the Court's personal jurisdiction in this district, and accordingly reside in this district for venue purposes.

### IV.    GENERAL FACTS

12.    On October 13, 2023, A.A. swallowed a button battery.  The button battery fell out of the Defective Product which, on information and belief, was marketed, sold, and delivered by Defendant to Plaintiff.  The Defective Product is depicted here in a photo:



13.    The button battery in question fell out of the remote because the door to the remote's battery access cover had inadequate safety precautions to prevent the access cover

---

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

1   from falling open.  Notably, opening the battery compartment does not require a two-step

2   method of opening the battery access cover; a simple pulling or pushing of the access cover

3   easily slides it open to expose and release the battery.



14.     The remote has a "drawer" battery compartment, which readily slides out from
the remote's base to expose the dangerous button battery.  The battery compartment securing
mechanisms on this particular remote failed to guard against release of the battery, where that
event was foreseeable.

15.     On information and belief, the Defective Product was sold and delivered
without adequate instructions to consumers or downstream users about either the incredible
dangers of button batteries themselves—much less of caustic choking hazards specifically;
how to safely install button batteries in the remote; dangers of the remote; or the importance
of keeping button batteries away from small children or animals.  On information and belief,
there were no relevant warnings on the remotes, the included instructions, or about the
dangers of button batteries.

16.     The button battery that fell out of the remote was a CR2032 lithium-ion type
battery.

17.     On information and belief, the Defective Product was featured, located, and
purchased on Amazon.com.  The remote was part of an after-market stereo system in an RV

COMPLAINT FOR DAMAGES AND INJUNCTION - 5
No.

Corr|Downs PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

sold by an individual seller to A.A.'s family, but this individual stated he bought the product on Amazon.com.  This fainthearted individual stated he would not disclose the order number specifically to Plaintiffs' counsel because he was too afraid to get involved in a lawsuit to assist the small, injured child. Therefore, the undersigned has been unable to specifically identify the manufacturer of the remote which featured no indicia of brand, and it will be necessary to involve him in the case.

18.    Given Amazon's role in our society in the distribution of goods, it is uniquely poised to prevent harms, and in this case, to take proactive steps to suspend sales of defective products and warn unsuspecting consumers of the significant dangers posed by these defective products. The dangers of these defective products foreseeably extend to Amazon's customers, those who may encounter these products, and especially to small children and pets.

19.    The dangers of button batteries like these are well known to those in the manufacturing industry.  As early as May 12, 2012, on NBC's "The Today Show" there was an episode called *ER Visits Double as More Kids Swallow Batteries.*  According to the show, "Doctors say that the current from a three-volt battery can burn a hole in the esophagus in less than two hours."

20.    On May 24, 2010, *Pediatrics*, the official journal of the American Academy of Pediatrics, ran an article titled *Preventing Battery Ingestion: An Analysis of 8648 Cases*. The article warned that "manufacturers should redesign household products to secure the battery compartment, possibly requiring a tool to open it."[1]

21.    On September 22, 2011, NEMA[2] and CEA[3] came out publicly to raise industry standards requiring either a tool or multiple simultaneous maneuvers to access a lithium battery compartment.  A variety of economically feasible alternatives are available to the drawer design sold by Defendant.  For example, there are remotes that have required coins to

---

[1] May 24, 2010, *Pediatrics*, Litovitz, Whitaker, & Clark, *Preventing Battery Ingestions: An Analysis of 8648 Cases.*
[2] The Association of Electrical and Medical Imaging Equipment Manufacturers.
[3] Consumer Electronic Association.

COMPLAINT FOR DAMAGES AND INJUNCTION - 6
No.

unscrew compartments.  There are also simple screws that could secure compartments.  These precautions would cost mere cents.

22.    And yet, according to the National Safety Council's 2021 website, a consumer safety organization, every year, more than 2,800 kids are treated in emergency rooms after swallowing button batteries.  The number of injuries and deaths have increased nine-fold in the last decade.  https://www.nsc.org/home-safety/safety-topics/child-safety/button-batteries

23.    There were no warnings on the remote control describing the harms of button batteries generally, and there were no mechanisms in place to keep the battery from dropping out of the drawer mechanism of the Defective Product.  On information and belief, at no point in the design of the Defective Products were they even subjected to drop tests, or stress tests to see whether the remotes would secure the button batteries.

24.    There are also at least four well known standards for product configurations with requirements to prevent access to button battery compartments by children, which include ASTM F963 Toy Safety; ASTM F2923-11 Children's Jewelry; UL 60065 Audio Video Equipment; and UL 4200A Products Incorporating Button Cell Batteries of Lithium of Similar Technologies.  These standards were not followed by Defendant in preventing harms from button batteries.

25.    Unfortunately, the known safety standards were not followed in this case by Defendant.  To design, manufacture, or sell products that are defective by these basic standards, or to turn a blind eye and ignore safety standards geared to protect small children, is recklessly and grossly negligent in that it shows extreme disregard of the likely harm to consumers.

26.    On or around October 13, 2023, A.A. swallowed a button battery that fell out of the Defective Product.

27.    A.A.'s mother discovered the remote that was in pieces on the ground in the RV.  Baby A.A. had grabbed the button battery that fell out of it, swallowed it, and was choking.  They took A.A. quickly to an emergency room in Livingston, Texas and an x-ray showed the button battery lodged in his airway.  He was then taken by ambulance to

COMPLAINT FOR DAMAGES AND INJUNCTION - 7
No.

Corr|Downs PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

specialists at Texas Children's Hospital in the Woodlands.  They took more x-rays and surgically removed the battery.  It took three specialists to remove the battery.

28.    Luckily, A.A. lived through the ordeal, but he has been seriously injured, and since the initial incident, he has already had one major surgical corrective procedure, and is likely to have more.  The injury has interfered with A.A.'s ability to swallow and keep down food.  It has narrowed his esophagus because of extensive scar tissue.  He will likely have permanent injuries for many years to come, and he will undoubtedly continue to have pain and suffering as a result of the injury.

29.    Baby A.A.'s parents suffered the immediate and proximate emotional trauma, and the foreseeable enduring emotional trauma of having to watch their son suffer horrendous injuries.

30.    These are injuries that might have been prevented with a tiny two-cent screw or correctly oriented plastic latch.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### (*Negligent Product Liability*)

31.    Plaintiffs incorporate each and every allegation above as though fully set forth herein.

32.    Defendant was engaged in the manufacture, design, testing, producing, inspecting, vending, distributing, introducing into interstate commerce, transporting in interstate commerce, advertising, selling, installing, assembling, or recommending for use to the general public the Defective Product.

33.    Defendant owed duties of care to actual and potential customers and consumers with respect to the Defective Product.  Such duties included but were not limited to: designing, formulating, manufacturing, distributing, selling, and providing the product in a fashion that was safe to consumers; packaging the Defective Product safely so as to reasonably minimize the potential for injury; labeling the Product so as to reasonably warn consumers of the potential for danger; and reasonably applying knowledge and

Corr|Downs PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

information from past incidents, complaints, studies, observations, reports, experience, or investigation to provide for the safety of consumers with respect to the products.

34.    Defendant knew or should have known that if the Product was not properly and carefully manufactured, designed, tested, inspected, assembled, delivered, molded, labeled, warned, and signed prior to sale or distribution to consumers, it would, if used by any member of the general public, be a substantial factor in causing serious and permanent injury.

35.    Defendant negligently and carelessly manufactured, designed, tested, failed to test, maintained, inspected, installed, assembled, delivered, molded, labeled, failed to warn, signed and sold the Product so that it was in a dangerous and defective condition and unsafe for the use and purposes for which it was intended.

36.    The condition of the Defective Product was known to Defendant or should have been discovered by and through the exercise of ordinary care and reasonable diligence, but was not disclosed or made known to purchasers or users of the Product, including Plaintiffs.

37.    The purchasers or users of the Defective Product had no knowledge of the defective condition of the Defective Product or of any danger in the use of the Defective Product.

38.    On information and belief, in doing the acts alleged in this Complaint, Defendant violated statutes, rules, standards, regulations, or guidelines applicable to Defendant's conduct, including laws, regulation, or industry related standards relating to the manufacture, distribution, and sale of the Defective Product and similar items.

39.    The injuries and damages to Plaintiffs described more fully above were a direct and legal result of the violations of the statutes, rules, regulations, standards, and guidelines by Defendant.

40.    The statutes, regulations, standards, and guidelines violated by Defendant were drafted, written, and designed to prevent the type of incidents and injuries that occurred in

Corr|Downs PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

this case, and Plaintiffs are among the class of persons the statutes, regulations, standards, and guidelines were designed to protect.

41.     As a direct and legal result of the negligence and carelessness of the Defendant, Plaintiffs suffered severe shock, injuries, and traumatic injury.

42.     Plaintiffs were also injured in their health, all to Plaintiffs' general damages in a sum which will be shown according to proof.

43.     As a further direct and legal result of the negligence and carelessness of the Defendant, Plaintiffs were compelled to and did incur expenses for medical care, hospitalization, nursing and attendant care and other incidental expenses and will have to incur additional like expenses in the future, all in amounts presently unknown to Plaintiffs. Plaintiffs therefore ask leave of court either to amend this Complaint so as to show the amount of the medical expenses, when ascertained, or to prove the amount at the time of trial.

44.     As a direct and legal result of the negligence and carelessness of the Defendant, Plaintiffs were damaged and disabled during A.A.'s life and suffered immeasurably in terms of their emotional distress and continuing injuries, including severe emotional distress to his father and mother.

45.     The negligence and carelessness of the Defendant was a substantial factor in causing the injuries and damages alleged above.

46.     Plaintiffs hereby incorporate by reference each and every allegation articulated above as though fully set forth herein.

## SECOND CAUSE OF ACTION

### (*Strict Products Liability—Design and Manufacturing Defect*)

47.     At the time that the Defective Product left the control of Defendant, the Defective Product was dangerous and defective as a result of design and manufacture by Defendant.

48.     At all times relevant, Defendant knew and intended that the Defective Product would be purchased, and used by members of the general public and downstream consumers

---

COMPLAINT FOR DAMAGES AND INJUNCTION - 10
No.

**CORR|DOWNS PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

who would rely on Defendant to safely design, manufacture, test, market and distribute the Product in a safe manner and to transmit relevant warnings about the Defective Product.

49.     At the time of the incident giving rise to this Complaint, the Defective Product was being used in a manner and fashion that was foreseeable by Defendant, and in a way the Defective Product was intended to be used.

50.     Defendant manufactured and designed the Defective Product defectively or knew its manufacture or design was defective, or both, causing the Defective Product to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

51.     In addition, the risks inherent in the design of the Defective Product, and especially the non-secured remote device far outweigh any benefits of that design.

52.     On information and belief, the Defective Product is defective because it was not designed with durable enough materials or mechanisms such that safety mechanisms could survive their useful lifespan.

53.     On information and belief, the Defective Product is defective because it was not designed with durable enough materials to retain resiliency of safety mechanisms at critical times.

54.     On information and belief, the Defective Product is defective because it was not designed in a manner to withstand the environment in which it was likely to be found so that it was unreasonably dangerous for its intended users and for those who might come in contact with the product.  It was defective because, despite the enormous potential to cause injury or death, it was not designed or manufactured to be able to survive foreseeable use and/or misuse by consumers, downstream users, children or innocent bystanders.

55.     On information and belief, the Defective Product was defective by manufacture, because the material from which it was made failed at critical junctures which might have maintained operability of the safety mechanism.

Corr|Downs PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

56.     On information and belief, the Defective Product was defective by manufacture by reason of poorly fashioned plastics, which were reasonably probable to fail in a situation where they should have been strong.

57.     On information and belief, the Defective Product was defective by manufacture, because it was not suitably designed to withstand the environment in which it would be likely to operate, including around small children.

58.     On information and belief, the Defective Product was unreasonably dangerous because a reasonable consumer would not have foreseen the absence of a fundamental safety mechanism.

59.     On information and belief, the Defective Product is defective because it is reasonable to anticipate small children and pets will come in contact with items such as remote controls.

60.     On information and belief, the Defective Product is defective because it is reasonable to anticipate remote controls will be used in an environment where they are susceptible to being dropped and where they are susceptible to repeated use.

61.     On information and belief, the Defective Product is defective because a variety of safer, reasonable alternatives would have been available to designers of the instant remote controls, including, but not limited to inexpensive screw mechanisms that are hard to break, hard to wear out, and hard to access by small children.

62.     On information and belief, the Defective Product is defective because the Defective Product did not contain a two-step safety mechanism to open the battery compartment.

63.     On information and belief, the Defective Product is defective because it is reasonably foreseeable button batteries can be consumed by small children which will cause catastrophic and sometimes deadly injury to their victims.

64.     On information and belief, the Defective Product was defective by design, and/or manufacture, because the internal battery container failed to maintain proper tension on the battery to keep it in the drawer in the event the drawer opened.

Corr|Downs PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

65.   On information and belief, Defendant had direct knowledge of the dangers posed to small children by button batteries, which have harmed other children they have sold products to, and yet they continue to sell products that are defective and contain button batteries.

66.   As a legal result of the aforementioned dangerous and defective condition of the Defective Product, Plaintiffs were injured and suffered damage as alleged.

### THIRD CAUSE OF ACTION

### (*Strict Products Liability—Failure to Warn of Defective Condition*)

67.   Plaintiffs incorporate each and every allegation above as though fully set forth herein.

68.   The Defective Product was in a dangerous and defective condition when introduced into the stream of commerce by the Defendant.  The Defective Product was so defective that when used in a way that was reasonably foreseeable, the potential risks of the Defective Product created a substantial danger to users of the Defective Product and others and could and would cause those serious injuries.

69.   The Defective Product had potential risks that were known or knowable by use of scientific knowledge available at the time of manufacture, distribution and sale of the Defective Product.  Defendant knew, or, in the exercise of reasonable care, should have known that the potential or inherent risks presented a substantial danger to users of the Defective Product because Defendant possessed special knowledge of the materials, design, character and assemblage of the Defective Product.  Plaintiffs and ordinary consumers would not recognize, nor have knowledge that the Product was dangerous and defective.

70.   On information and belief, the Defective Product was defective by failure to warn on multiple occasions, because there were no warnings of the dangers of button batteries on the remote control itself, or, on information and belief, with any of the literature that was mailed with the product, which information and warnings might have informed parents, and would-be users of the product, of the extreme dangers of the button battery products to small children from ingestion.

COMPLAINT FOR DAMAGES AND INJUNCTION - 13
No.

**Corr|Downs PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

71.     Although possessed of special knowledge of the potential risks and substantial danger to users of the Defective Product and others, Defendant failed to warn or instruct of the potential risks and dangerous and defective conditions of the Defective Product. Defendant failed to provide inserts or instructions warning of the dangers that a button battery that fell out of the remote could injure or kill a child that ingested the battery.  No markings or warnings were located on the Defective Product that might have been noted by downstream users of the Defective Product.

72.     Plaintiffs were harmed and suffered the injuries and damages alleged as a result of Defendant's failure to warn.  The lack of proper warning or instructions was a substantial factor in causing Plaintiffs' harm.

**FOURTH CAUSE OF ACTION**

**(*Breach of Implied Warranty*)**

73.     Plaintiffs incorporate each and every allegation above as though fully set forth herein.

74.     At relevant times herein, Defendant marketed, manufactured, promoted, distributed, imported, or sold the Defective Product for use by the public at large, including the Plaintiffs.

75.     Defendant knew the use for which their Defective Product was intended and represented or impliedly warranted the Defective Product to be of merchantable quality, and safe and fit for its intended uses and users of the products.

76.     Plaintiffs made a decision to use the Product, and reasonably relied upon the Defendant and its agents to disclose known defects, risks, dangers, and side effects of the Defective Product.

77.     Plaintiffs had no knowledge of the falsity or incompleteness of the Defendant's statements and omissions concerning the Defective Product when Plaintiffs encountered the Defective Product.  The Defective Product was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce by Defendant.

COMPLAINT FOR DAMAGES AND INJUNCTION - 14
No.

78.    Defendant had sole access to material facts concerning the defects, and Defendant knew that users, such as Plaintiffs, could not have reasonably discovered such defects.

79.    By the conduct alleged, Defendant impliedly warranted to Plaintiffs that the Defective Product was merchantable, usable and fit for the purpose intended.

80.    Defendant breached this warranty in importing, selling, designing and distributing the Defective Product in a dangerous and defective condition and in failing to warn Plaintiffs and users of the Product of these defects.

81.    As a direct result of the conduct of the Defendant, Plaintiffs have suffered serious and permanent physical and emotional injuries, have expended and will continue to expend large sums of money for medical care and treatment, have suffered and will continue to suffer economic loss, and have otherwise been physically, economically, and emotionally injured.

## FIFTH CAUSE OF ACTION

### (Negligence/Negligent Undertaking/Enterprise)

82.    Plaintiffs incorporate each and every allegation above as though fully set forth herein.

83.    On information and belief, Defendant has taken steps in the form or policies or procedures to ensure the safety of products sold on its website.

84.    On information and belief, Defendant requires, have required, or should require vendors on its platform, or its partners, agents, or joint-venturers, to abide by safety standards, including but not limited to those provided by UL or others about replacement batteries, and warning and for securing mechanisms for products that contain button batteries.

85.    Defendant acted as a gatekeeper to keep its customers safe and can exert pressure on upstream suppliers and agents to enhance safety.  Having accepted the role and undertaking of looking out for consumer safety, it owed a duty to exercise reasonable care to protect that undertaking.  Consumers have come to expect that they can buy safe products from Defendant including on any Amazon platform.

COMPLAINT FOR DAMAGES AND INJUNCTION - 15
No.

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

86.     In this case, unfortunately Defendant breached this obligation, and did not take adequate precautions to ensure the remotes, or included button batteries, sold to Plaintiffs were safe products, or there were proper safety precautions in place for the remotes and the batteries by themselves.  To the extent Defendant had regulations and protocols to promote safety, they were not followed.  These breaches were the proximate cause of harm, and a substantial factor in bringing about the injuries, damages, and harms to the Plaintiffs.

87.     To be clear, this is a case about liability for selling a *defective product* that injured A.A. and members of his family.  This is *not* an action against Defendant related to its publication of third-party content or speech on its website, as might be protected under 47 U.S.C. §230.  Nothing in this complaint is intended to make such a claim against Defendant on these grounds and nothing in the complaint should be construed in such manner.

## SIXTH CAUSE OF ACTION

### (*Emotional Distress*)

88.     Plaintiffs incorporate each and every allegation above as though fully set forth herein.

89.     A.A.'s father, Caleb Allen, and mother, Kasey Allen, suffered extreme emotional distress as bystanders having to experience the mental and emotional trauma from the injury and care of their son and having firsthand experience in observing the severe injuries to their son. A.A.'s parents were present at the time of the injury-producing events and aware of the severe injuries being exacted against their son.  In addition to the tremendous mental stress exacted from the ordeal, A.A.'s family was financially damaged by the family emergency, loss of income, and attendant expenses and travel related to long-term housing and care. This emotional distress was inflicted as the result of recklessness as to the likelihood of severe injury, and negligence, and was the proximate cause of damages to A.A.'s parents.

90.     Defendant's acts and omissions directly and proximately caused A.A.'s parents to suffer and continue to suffer anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame, such that an ordinary, reasonable person would be unable to

COMPLAINT FOR DAMAGES AND INJUNCTION - 16
No.

Corr|Downs PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

cope with it.  Defendant's negligence was a substantial factor in causing Plaintiffs' serious emotional distress.  Plaintiffs seek compensation for the damages received as a result of this severe emotional distress, in the past and that is reasonably likely to extend into the future.

## VI.    DAMAGES & RELIEF REQUESTED

91.    As a direct and proximate result of Defendant's conduct above, Plaintiffs, individually, and on behalf of A.A., and as next-of-friend of minor claimant, have suffered the following damages, and Plaintiffs pray for judgment against the Defendant and an award against each of them for:

    a.    General damages according to proof;

    b.    Lost earnings, health care expenses paid in the past, and that will be necessary in the future;

    c.    Physical pain and suffering in the past;

    d.    Physical pain and suffering which will be suffered in the future;

    e.    Mental anguish and emotional distress suffered in the past;

    f.    Mental anguish and emotional distress that will be suffered in the future;

    g.    For interest from the date of accident to the time of judgment;

    h.    For costs of suit incurred herein;

    i.    For costs attendant to medical care, lodging care, travel expenses, and incidental expenses attendant to receiving medical treatment;

    j.    An award for punitive damages as may be permitted by law;

    k.    An award of reasonable attorney fees where permitted by statute;

    l.    A preliminary and permanent injunction restraining Defendant from directly or indirectly selling the Defective Product to any other persons;

    m.    A preliminary and permanent injunction requiring Defendant to notify all relevant consumers and recall the Defective Product and issue suitable recall notices to consumers who have purchased these Defective Product in the past; and

    n.    For such other and further relief as the Court deems proper.

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

1

## VII.   JURY DEMAND

NOTICE is hereby given that Plaintiffs demand a trial by jury in the above-captioned matter.

DATED this 12th day of February, 2024.

CORR|DOWNS PLLC


By *s/ Joseph P. Corr*
    Joseph P. Corr, WSBA No. 36584
    100 W Harrison St, Suite N440
    Seattle, WA 98119
    Telephone: 206.962.5040
    jcorr@corrdowns.com

BUCHE & ASSOCIATES, P.C.


By *s/ John K. Buche*
    John K. Buche (*Pro Hac Vice* forthcoming)
    Byron E. Ma (*Pro Hac Vice* forthcoming)
    901 S MoPac Expy., Bldg. 1, Ste. 300
    Austin, TX 78746
    Telephone: (512) 215-4997
    E-mail: jbuche@buchelaw.com
    E-mail: bma@buchelaw.com

*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES AND INJUNCTION - 18
No.

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040